one today, which is case number 25-30345, Consolidated with Others, Cixela Investment v. Hope Federal Circuit, I'm sorry, Credit Union et al. And we will begin with Douglas Harville. Yes, Your Honor, thank you. For Cixela Investment. Good morning, Your Honors. Douglas Lee Harville for Cixela Investments. We're here today on three issues that we have with the lower court's judgment. The first being the grant of summary judgment to both Hope Federal Credit Union and Communities Unlimited. The second dealing with the court's decision to strike pretrial filings by Cixela and to grant a default judgment. And the final, in regards to Communities United, the awarding of attorney's fees. Your Honors, this is an odd case in some ways, in a lot of ways. In arguing this, we attack none of the underlying judgments of the court. It's all an abuse of discretion in how the court allowed the development of facts. I know that usually in a case where there's an allegation that an attorney failed to comply with the rule, failed to miss the deadline, things of that nature, the fault lies with the plaintiff, the party who hired the attorney. It's one of the foundations of our adversarial system. But I believe that in a case like this, it can be so bad whenever you start balancing the terms that are mentioned by the court below and that are addressed by this court, what do you do to ensure the integrity of the judicial process? What do you do to secure the interest of justice? I think this is that rare case where the line was crossed and the court abused its discretion by not taking the trial attorney for Cixela out of this case, by not granting relief to the party, Cixela, because of what its attorney did. I have had cases where I've made similar arguments with deadlines. Well, I have a question on the issue of discovery not being allowed further. I'm respectful of that, but am I missing something? It was already two years into the case when that happened, and so how can that be terrible to not give more discovery after two years? The time, Your Honor, I agree. This case was filed March 1, 2023. Summary judgment is granted in 2025. One issue that caused some, I think, difficulties for the attorney at the time these were filed, she enrolls August 15, 2024. She'd been somewhat of a shorter period of time. But what happens in this case, Your Honor, and it's recognized by the court, it's recognized by the defendants, there were issues with the discovery in this and the volume of the discovery. There are repeated e-mails by Cixela's counsel stating, I don't think I have all the discovery. I can't find all the discovery. At one point in time, and I believe that it was on Hope's part, there were some privileged documents. And so what they did is they allowed access by a remote link, and then they, I forget if it was an e-mail exchange, or they become aware or they think that that order has been violated, so they terminate the link. And Cixela's attorney had some problems with that. So it's repeated. And typically, I agree with Your Honor, when you look at two years in a state court case, it may not be that long. In a federal court case, that's a long time to be active. But what you have in here, which you don't have in most cases, you have both defendants, CU and Hope, you have the magistrate judge, and you have the district court judge, who all recognize repeatedly that Cixela's attorney is, one, having issues with this case and the discovery. Particularly what's troubling in this case, there are allegations of mental issues that she is having. It's brought to the court's attention not once but twice, the magistrate judge specifically. I think why you get to the abuse of discretion by the district court, though, comes from that. There's an April 20, 2025, magistrate judge conference. And the transcript of that's in the record. In that hearing, the magistrate judge says to the attorney, you have repeatedly expressed that you have problems. Do you need to get out of this? Counsel, I believe it's for CU, says, Your Honor, we agree. She's clearly got some issues. We would hate to see her leave this late in the game, which addresses Your Honor's questions about the two years. But if it's going to happen, it needs to happen sooner than later. That's on March 20. And I think that's key here, Your Honor. That is a recognition by everybody that it's not a delay tactic. It's not a stall tactic. It is a case, and if you look at Hope's motion for summary judgment, 1,700-plus pages, certainly a daunting task. Is it one that you should be able to handle if you're in federal court? Yes. Federal court cases are complex. Ideally, criminal matters with gigabytes of data, you need to be able to process it. But it gets back to those points. Where does this line, where do the – Weren't there several requests for additional time to deal with this case? Yes, Your Honor. I believe if you look, it's noted there were 12 motions for extension of time. Nine including Hope's motion for summary judgment. Five were before the actual motion was filed. Four were after. And how many of them were granted? To the best of my knowledge, the court granted each of those requests for more time. That's a lot of leniency, don't you think? It is more leniency than I would suspect and I would expect in my practice, yes, Your Honor. But I think, though, that what you're looking here, and I think that it bleeds into the abuse of discretion. This is, if I were here arguing the motion for summary judgment, a single motion for summary judgment, and there's no other evidence or proof there, I think I have a problem. But it's a pattern. This is not a losing client. This is not 6ALE losing the case and saying, Your Honors, we lost motion for summary judgment. We want to blame our attorney. This is repeatedly, and look at what the attorney is doing. Twice the magistrate judge has to tell her, not directly because magistrate judges are careful in how they word things. They don't want to appear to be leaning toward a side. They tell counsel, you need to behave more professionally in your email. She is saying that counsel is berating her, belittling her, demeaning her. The lawyer, when you look through this record again and again and again, you have an attorney who is overwhelmed. And that is what I think weighs against just finding the court didn't abuse its discretion. We have to look for justice. We have to look for protecting the administration of the process. Look at what the district court did in granting that judgment. It didn't get to the merits. It said, I have a filing by 6ALE, and 6ALE has a lot of evidence here, but they don't follow the rules, which you are required to cite the court to the pages. So where's your proof? The court shouldn't have to look. That's a mistake by 6ALE's attorney. And that's where I think, Your Honor, it was a frustrating litigation. It dragged on and dragged on. But why? And what did these parties recognize? They all recognize it's the attorney's fault. One of the cases that I cited in here is a state law case from Louisiana Supreme Court, which just came out. It's ELA Associates. That is a case that I think colors or should affect how this court decides this case. And that is, in this case, you do not have an individual plaintiff. You have a corporate plaintiff who has to and cannot act on its own. If I were suing the car wreck that I was injured in and I'm suing with an attorney, that attorney starts having these issues that 6ALE's attorney was having. You go get another attorney, or I can fire the attorney and proceed per se. In this case, because you have a corporate entity, they don't have that escape. But why didn't they find another attorney? And there were, it appears, some efforts. I know that there was a, I don't think it was officially enrolled as an attorney, but there was a counselor, someone who was going to help them. There were payment problems. I'm certainly not saying that things could not have been done better on the plaintiff's side. What I'm saying, though, is whenever you look at this, when you look at the standards for giving a 56D, giving more time, in the opposition, 6ALE's attorney who had requested 12 extension, who has a case with thousands and thousands of documents, and the motion for summary judgments decided within two months. This is not the case where they took six months or a year. When did she move to withdraw? She moved to withdraw a total of four times, Your Honor. What was the basis for the motion? The first motion to withdraw comes shortly after the motion for summary judgments are granted. The motions for summary judgments are granted on May 29th, on May 9th, I'm sorry, on June 9th, less than 10 days, well, less than two weeks later, the first motion to withdraw is granted. Now, in this, Your Honor, in considering this abuse of discretion, in this argument, the second issue is to see you. This is done, filed on June 3rd. It's less than three months after the magistrate judge says, you may want to withdraw, after attorney says, I'm going to consult with my clients, and after one of the defendants says, it may need to happen, I hate to see it happen now. This is a recognition within three months, and the district court simply denies it. There's then, June 9th, a second request. It's denied quickly. June 12th, another. Had the trial already been set? The trial had been set. The trial was set in the pretrial order. As a lot of times, especially in complex cases with a lot of discovery in my experience, you will have a motions date, and then that motions date, by the time it's determined, you're drifting toward the trial date. Sometimes it requires a trial date to be continued, because there hasn't been a decision. In this, there was. The trial date, again, in this matter, though, because the motions for summary judgment had been granted May 29th, the trial date that was subsequently set was solely on the counterclaims for CU. So it's a much limited case. And that's why I certainly think whenever you look at the record across all of the, the entire record across all of 6ALA's attorney's conduct, to credit her, which the court largely does in granting sanctions against 6ALA, it credits what the attorney says. But this is an attorney who you would also have to credit making personal tax against defense counsel, which the court found baseless. She makes a tax against the procedure of the court. She is overwhelmed. And she says that she has physical and mental issues that are affecting her ability. Well, but she was untimely. She also didn't follow the local rules, et cetera. I mean. Yes. And that's why. And they could have gotten another attorney. It's not like there's no attorneys in the world. That is true. But I would note that in your honor's point, the argument of they could have got another, could have hired another attorney. That is never, to my knowledge, an argument that's made by the court for reaching its decision that they shouldn't be given more time. When you're looking at the decision for the denial of the motions, or the granting of the summary judgment motions, the denial of more time to answer, the court does not address that issue. So I think it would definitely have been something. I would ask your honors to find that that's not a basis for the court. Your honors recognizing that and my recognizing that should not justify the court in reaching the decision. The court in reaching the decision noted only how badly counsel performed. It did not at that time fault 6ELA for not retaining another attorney. And again, if we're just talking about the motions, I think I'll lose that. It's going to be a harder finding for your honors to meet this standard, the abuse of discretion standard. But you don't just have that here. It continues after that. It continues shortly thereafter. And I've dealt with a lot of cases, but I've not dealt with the case pre-ruling. And that's what I think is also important here. This is not just complaining after the fact. Pre-ruling on the motion for summary judgment. Pre-ruling on the motion to strike in the default judgment. You have a recognition by every party involved here that there is an issue. I think that this is a case, if there isn't a situation where an attorney's complete and abject failure to follow the rules, where an attorney's mental and physical issue can ever get a ruling and a finding of abuse of discretion, I think it's this case. Because you have all the parties who recognize the problem. Unfortunately for the administration of justice, it wasn't dealt with. I think that your honors can correct that. We're not asking for a complete reopening of summary judgment time. We're asking for an opportunity to have this remanded to get more time to address those motions, so that you can have, in essence, what this case was, a trial on paper, almost 3,000 pages, countered by a competent attorney who complies with the Rule 37.1 requirements if more discovery is needed, who complies with the Rule 56 requirements if that's needed, and puts this issue before the court, so that justice can be administered, and so that the judicial integrity can be decided. And you don't have a complex case like this decided because a party's attorney was woefully inadequate in defending it, something that's recognized throughout the record. I believe I have about 20 more seconds or so in my initial 15 minutes. I'd be happy to answer any questions that you have. Otherwise, I respectfully reserve my additional time. All right. You'll have time for rebuttal. Thank you, your honor. We appreciate your argument, and we'll now hear from Christopher Meredith for Hope FCU. Good morning, your honors, and may it please the court. My name is Christopher Meredith, and I represent appellee Hope Federal Credit Union. The court has, of course, just heard some extensive argument regarding the mental and professional struggles of 6L's former trial counsel, and while unfortunate, it's simply irrelevant to the district court's granting a summary judgment in favor of Hope and Communities Unlimited. 6L has cited no legal authority for the proposition that the district court should have sua sponte removed its counsel from the case. Even when their counsel did file her initial motions to withdraw, her client opposed those motions. 6L knew the lawyer that it hired, and it wanted her to represent it in the case, and it is stuck with the ramifications of that decision. I would also note that the attorney in question was actually the third attorney that had entered an appearance in the case on behalf of 6L Investment Group. It's not necessarily germane to the issue before the court, but there had been some personality clashes there, which was some of the reason for the prior counsel's withdrawal. But today is the first time that 6L has argued that the district court abused its discretion by failing to sua sponte disqualify its own counsel. That was not stated in the briefing, and again, this is the first time that argument is being made. The crux of the argument presented in the briefing was that the district court abused its discretion by failing to grant more time to respond to the motions for summary judgment or perhaps for failing to grant more time for discovery. It's not entirely clear. But in either event, the district court did not abuse its discretion. Again, the abuse of discretion standard requires that the district court's action have been arbitrary or clearly unreasonable. And there's simply no basis for a finding that the district court acted in an arbitrary or clearly unreasonable manner. It's been about a year since summary judgment was granted, and even today there has been no suggestion that there was any evidence to support 6L's claims. So even if this were to go back to the district court with another attorney, there's no reason to believe it would affect the outcome, because there's been no evidence put forward in support of their claims, which is, of course, the reason that the district court granted summary judgment in the first place. To the extent that the appellant is appealing under Rule 56D of the Rules of Civil Procedure, Rule 56D allows the court to defer or deny summary judgment or to permit more time for discovery if the non-moving party submits a declaration stating specific reasons why it is unable to present facts that it needs to justify its opposition to summary judgment. And this court has repeatedly held that that declaration must show two things. First, it must show the probable existence of specific facts that can be obtained reasonably that would create a genuine issue of material fact. And second, the declaration must show that the party seeking relief under Rule 56D has diligently pursued discovery. As a threshold matter, 6L did not provide such a declaration at all, and this court has held that the failure to submit such a declaration is a waiver of an argument that the court should have granted more time under Rule 56D. The simple fact that the declaration was not submitted at all means that that issue is waived. But even if it had been submitted, there's been nothing to suggest that there's any evidence that was not received that could be received that would make any difference in the summary judgment analysis. Even today, there's been no suggestion of any evidence that the appellant did not have. And perhaps more importantly, there was no showing of any diligence in pursuing discovery. This court has held repeatedly and most recently in the Moreno v. Microsoft Corporation case from December that a party who raises questions about the adequacy of discovery for the first time in an opposition to summary judgment has failed to diligently pursue discovery. There was no indication during the discovery period that any documents that the appellant believed that it needed had not been received. There had been no suggestion prior to their opposition to the summary judgment that they did not have what they needed. In fact, the record indicates that there was a telephonic status conference prior to the summary judgment response deadline where specific discovery issues were discussed. And Cicela's counsel indicated that she merely needed access again to some of the documents and that she had everything else that she needed. It was discussed with the magistrate judge. Additional time was granted. She received everything she asked for, and there was no indication after that that that was insufficient or that more time was needed. And again, Cicela did ask for and was granted three extensions of their time to respond to the summary judgment motion, and there was no request that was denied. They got all the time they asked for, and they never asked again. And so it's not an abuse of discretion for the district court to not grant, request that relief that was never requested. Cicela never moved to compel discovery, never requested a local rule 37.1 discovery conference, and again raised the issue for the first time in response to summary judgment, which is simply not sufficient. You don't have to keep talking if you don't have more to say. I was just making sure, Your Honor, I believe I've covered everything I intended to say, and I would yield the balance of my time to Mr. Bolton if that's permissible. Okay. No questions? No questions. Okay. Thank you. Thank you. We appreciate that. And we'll now hear from Jay Bolton for the Communities Unlimited. Good morning, Your Honors. May it please the Court, Jay Bolton on behalf of Communities Unlimited, Inc. You might refer to them as Communities or CU. We have been referring to Cicela Investment Group as either Cicela or CIG, just so you know. I might be using those. I'll second Mr. Mary's comment as far as we're hearing this argument for the first time today as far as shifting away from abuse of discretion by the judge in these particular rulings to being some broader abuse of discretion by not sua sponte removing this deal that was the second attorney for Cicela. Just to address that . . . She was just the second attorney? Correct. Mr. Meredith, I think, thought that it was the third. All right. There was two right by each other within a couple of weeks. All right. And it was Ms. Deal and another attorney, and then that attorney left after about two weeks. So Mr. Harville is actually the fourth attorney, whatever that says about dealing with the members of Cicela. But essentially, it appears that what Mr. Harville is arguing today is that because of ineffective counsel, that Cicela can appeal that, which I can't cite the case off the top of my head. I know Wynn is one of them. But there is no right to effective counsel in a civil case. And he referred to her as being woefully inadequate. Okay. The relief for woefully inadequate counsel is a malpractice suit, not an appeal. You don't get a do-over with a more competent attorney. How many litigants would like to come before this court and say, you know what? I didn't like the outcome, and I don't think my attorney did a very good job. So I've got this other attorney who actually knows what they're doing. We'd like a second chance. That doesn't happen. That's not allowed under the law. But, you know, it's essentially, again, the burden that they face is to come before the court with law, with facts, with an argument saying there was an abuse of discretion in granting the dispositive motion, in granting the fee shifting, in granting the default judgment. Here are those facts. Here are those law. Here's why it's an abuse. Here's why the court should overturn those. Instead, what we have is essentially, look at this shiny thing over here. And if you look at the reply brief that was filed, what's the first thing that they say? They acknowledge that Communities has raised all these issues of fact, these issues of law. But what you really need to look at, Your Honors, is the behavior of counsel at the time for 6L. How does that address the abuse of discretion argument? It doesn't. Because, again, they want you to look at this thing over here and, look, we dealt with this deal for some time. Yes, her behavior was at times erratic. Would I hire? No. But the members of 6L hired, and I want to say it was within 48 hours after their first attorney quit. So what does that tell you about her decision-making process? She jumped into this case. She didn't have to. She jumped in, and we already had a lot of documents. And there's just no argument that the court should have, again, sua sponte said, You know what? I can tell you're stressed out. Because I would have liked some relief myself. Because I was pretty stressed out dealing with this. I had never filed a, no, one. I filed one motion for sanctions my entire career before this case. So I could have used some stress relief as well. But that's not how this works. You show up, you do your job. And if your attorney doesn't show up and do their job, you can file a malpractice claim. There is relief. And the relief is not to come before the court and say, We get to open up discovery. We've already seen these motions for summary judgment. We know what's in their hand. Now we get a chance with a better lawyer to go and see if we can find something. So what they still haven't done, either at the trial court level or at the appellate level, is point this court to what exactly. Under 56D, you have to do that. You have to say, Okay, here's what we think we can get. And here's how that evidence will change the outcome of these dispositive motions. That hasn't happened. And we would submit to the court that the reason it hasn't happened is because there is no such evidence. If you look at, for example, I'm trying to think of one. Well, it's in the brief. We go through this rigorously. We did it at the trial court level. We did it in our appellate brief, pointing out they didn't have the evidence. And in one case, the one that I was thinking of, was there's an email from one of the members of HOPE where he's specifically saying this employee of CU did not give them the numbers they were hoping they would get, that they could use that as an excuse to deny the loan for 6L. What evidence are you going to get that overcomes an email from one of the decision makers at HOPE saying, Yes, CU didn't give us what we hoped they would give us, so we can't use that as a reason to deny the loan. That's what the whole breach of contract claim is about, is 6L alleging that my client gave something to HOPE and HOPE used it as a reason to deny the loan. But there's evidence that says that didn't happen. So what evidence is 6L going to find that can overcome that? We don't know because they haven't specifically identified anything. And the same is true for these other issues. Again, we've briefed that pretty thoroughly. Let me see if I had anything. I apologize. Obviously, this is off script because we were hearing a new argument today for the first time as far as what the focus was. But regarding the motions to withdraw, and Your Honor had asked some questions about the timing. Again, that's something we addressed thoroughly in the brief. And whenever you look at the actual timing and you look at the full law, because 6L and their brief, they cite some of the law. They cite some of the facts. But if you look at the full law and the full facts, we think you'll see that it was inherently reasonable to deny the initial motions to withdraw. We had a trial date, I want to say, within five weeks of the first motion. We had various deadlines looming. We had a pretrial conference to attend. But I think most importantly, the members of 6L had filed their own motion, a motion for mistrial. In that motion, or attached to that motion, they included, inexplicably, they included all of these emails between them and their second attorney. And in those emails, she is asking them to let her withdraw. Not only are they telling her no, they're cursing her for it. They're threatening suits against her if she continues to try to withdraw. So for 6L to come before this court and say, you know what? Yeah, there were all these deadlines. Yeah, we were fighting tooth and nail and threatening her so she couldn't withdraw. But in hindsight, we wish that judge had let her out then. That's, at best, a disingenuous argument. And Mr. Meredith has already gone into the 56D issues. I think he covered that pretty well. OK. And just this is kind of if we were really arguing abuse of discretion as to individual rulings by the court. Regarding the behavior of the members of 6L, which the court found to be delaying and contumacious, 6L does claim that that is clearly erroneous. But they don't go any further into it. They don't provide facts. They don't provide evidence. What they do is, again, look at the conduct of the attorney over here. So in each of these three elements, the dispositive motions, the default judgment, the fee shifting, no substantive argument has been made against those rulings. It's all been look at what this attorney did. And again, if they really do believe that it was woefully inadequate counsel, they can file a malpractice claim. OK. Thank you. We appreciate your argument. We'll now hear the rebuttal. Thank you, Your Honors. This is not a request that should deal with legal malpractice. As to the two issues that are addressed to CU only, community only, that is the granting of its motion to strike and the entry of the default judgment and the attorney's fees. The trial court abused its discretion by not allowing the counsel to withdraw. As I noted before, this is something recognized by the magistrate judge and by counsel for community. If you look at record page 8077, which is in 2530659, counsel for community says, I don't know what the resolution is. Only the attorney's name knows that. But if she's not going to be able to take this case through trial, as much as communities would really like not to see her withdraw this late in the game, if that's what needs to happen, we would prefer to see it happen sooner than later. This is a motion to withdraw that was filed by an attorney that was recognized as needed by counsel for the defense, recognized as needed by the magistrate judge. For those two issues, the second and third issue, I think this and the record before this that showed those mental issues shows that the court abused its discretion by not letting the attorney out. She asked for it. She had mental and physical issues that were affecting her performance. It was error to the administration of justice not to allow her to be out. Any ruling after that fact, I think, should be reversed. The first issue that was raised, we're not asking for a sua sponte removal of the attorney in relation to the motions for summary judgment. What we're saying is that under Rule 56D and the court's general desire to enforce justice, the court should have allowed more time. Well, he says under Rule 56D you need to show specifically what it is you're requesting, what you need, what it is you suspect. You may be able to find, if you're given this additional time and additional discovery, you need to show how it is and what you think you can get when you change the outcome. That's what he says you need to do under Rule 56D. Is he wrong about that? No, he is right about that, Your Honor. And, again, I think in the normal case, the routine case, that would be problematic. I didn't make those arguments of the extra facts, Your Honor, because it's not in the record. I think for me to go through and cite to the record two things that could support it, it wasn't done below, so that can't be aired by the court because the court didn't have that before it. What you have here is Mrs. Dill in opposition, and the court cites it at pages 55, 29 to 33 of the record on the bill. In ruling for the motion for summary judgment, it notes she made the effort. She asked for more time. She explains what she did. That's what I have to base it on. I have to base it on that because you have an attorney who was clearly in over her head. Perhaps they're right on that issue because there hadn't been the motion to withdraw at that point in time. Perhaps they're right, and I do lose that in that portion of it, as the motion for summary judgment to CU and to HOPE may fall under that. It's certainly different than the later argument for CU, which actually has the motion to withdraw. But I'm saying with your honors, in a case like this, and it's not going to open the floodgates, because you don't have cases where the defense attorneys, the lawyer, and the judges all recognize there's an issue. This is a fundamental failure of our legal system, and I think it's an abuse of discretion not to grant that. Against CU and HOPE, that's solved by just reopening the motion for summary judgment, giving them more time to address it, so that this case can be decided on the issues and not on the incompetence of an attorney. In your typical case, it wouldn't work because it is. It allows post hoc. I didn't win. I think this should happen. This is a case where everybody recognized that attorney should not have been, mentally or physically wasn't in this case. So, again, it's not asking for sua sponte. It's asking for the second two issues. It's an error in the motion to withdraw. It's asking this court for that first issue to inform the 50-60 issue with the knowledge that is later provided to the court, because I think you can look at the entire record in determining whether there was an abuse of discretion. Your honors, unless you have any other questions, I think that that is ‑‑ I think I've addressed the relevant points for their argument. Okay. We appreciate your arguments. We appreciate everybody's arguments, and we will decide this case, and we are now done with our oral arguments, this panel's oral arguments for today. We will be back tomorrow at 9 a.m. Thank you, your honors. Bye.